**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**
*Southern Division*

| | |
|---|---|
| ALL WEATHER, INC., | * |
| Plaintiff, | * |
| v. | * Case No.: GJH-19-565 |
| | * |
| OPTICAL SCIENTIFIC, INC., | * |
| Defendant. | * |

**MEMORANDUM OPINION**

Plaintiff All Weather, Inc. ("AWI") brings this diversity action against Defendant Optical Scientific, Inc. ("OSi") seeking damages for OSi's alleged breach of an agreement to provide working equipment for AWI to integrate into weather observation systems it contracted to sell to the Canadian government. Pending before the Court are OSi's Motion to Dismiss the Complaint, ECF No. 15, and AWI's Motion for Leave to File Amended Complaint, ECF No. 19, which OSi has opposed, ECF No. 21. No hearing is necessary. *See* Loc. Rule 105.6. (D. Md.). For the following reasons, the Court will grant the Motion for Leave and accept the Amended Complaint as the operative pleading, though some of AWI's claims will be dismissed.

**I.  BACKGROUND**

According to the Complaint,[1] AWI is a developer of weather measurement systems that it installs and maintains at aviation facilities across the world. ECF No. 1 ¶ 7. OSi is an engineering firm that designs and manufactures sensors that measure weather conditions including precipitation, air flow, turbulence, and visibility. *Id.* ¶ 8. In February 2012, the

---

[1] Unless otherwise stated, these facts are taken from AWI's Complaint, ECF No. 1, and are presumed to be true.

1

Canadian Department of National Defense ("DND") issued a Request for Proposals ("RFP") soliciting bids for an aviation-capable weather system. *Id.* ¶ 10. Specifically, the DND sought to procure up to 52 Automated Weather Observation System ("AWOS") units along with spare sensors. *Id.* ¶ 11. The RFP included technical requirements for the systems and provided that they were required to meet "Aviation Capable AWOS requirements" set by international, Canadian, or U.S. aviation bodies, as well as Canadian Aviation Regulations ("CARS"). *Id.* ¶¶ 11–13. Certifying AWOS units under CARS involves collecting, analyzing, and comparing data from the units over a period of time. *Id.* ¶ 13.

AWI decided to prepare a response to the RFP. *Id.* ¶ 14. After OSi learned of AWI's interest, it published a white paper indicating that its weather and visibility sensor, the OWI-430 DSP-WIVIS ("OWI-430"), met the technical requirements of the RFP. *Id.* ¶ 16. On or about December 9, 2011, AWI employee Bob Perrin contacted OSi about incorporating the OWI-430 into AWI's potential bid for the RFP. *Id.* ¶ 17. Wil March from OSi responded to AWI's inquiry and expressly represented that the OWI-430 met the technical requirements of the RFP and that its performance would meet CARS standards. *Id.* ¶ 18. AWI proceeded to prepare a bid for the RFP that included the OWI-430. *Id.* ¶ 19. In August 2012, DND awarded the contract to AWI and AWI signed an agreement to provide AWOS units that met the DND specifications. *Id.* ¶ 20.

AWi then began to buy OWI-430 sensors from OSi by sending OSi purchase orders. *Id.* ¶ 21. Specifically, "AWI and OSi entered into multiple purchase orders whereby OSi agreed to provide AWI with OWI-430 sensors." *Id.* The original Complaint asserts that "[e]ach purchase order incorporated OSi's Terms & Conditions by reference" and that "[i]ncluded in the terms of each purchase order between AWI and OSi was an express warranty that the OWI-430 would meet the technical requirements required for AWI to fulfill its obligations to DND." *Id.* ¶¶ 21–

22. AWI built four prototype AWOS units that included the OWI-430, which it "factory acceptance tested in November 2012." *Id.* ¶ 23. AWI was then authorized to begin field testing its units and installed one at a facility in Bagotville, Quebec. *Id.* ¶ 24. It installed the remaining three prototypes for testing throughout 2013. *Id.* ¶ 25.

Between May 2014 and December 2016, AWI executed seven additional purchase orders with OSi, purchasing a total of 74 OWI-430 sensors for $457,230.60. *Id.* ¶ 26. In February 2016, however, the Canadian Department of the Environment, which had performed testing on the AWOS units to determine if they would meet CARS standards, informed AWI that the OWI-430 sensors had failed its testing and did not meet the standards. *Id.* ¶¶ 27–28. AWI informed OSi that there were problems with the OWI-430 on February 29, 2016. *Id.* ¶ 29. In March 2016, AWI and DND signed an amendment to their contract that permitted AWI to continue deploying its AWOS units while it worked to resolve the problems with the OWI-430 but reduced DND's payments to AWI by ten percent during that time. *Id.* ¶ 30.

OSi worked through 2016 to solve the problems with the OWI-430, including by testing the devices in different locations and releasing at least three firmware or software updates. *Id.* ¶ 31. AWI cooperated by retrieving sensor data and providing it to OSi, coordinating sensor swaps at the DND testing sites, and designing and manufacturing custom cables allowing DND technicians to install OSi's updates. *Id.* ¶ 32. OSi continued to replace and add hardware and release additional firmware updates through 2017, but none of its attempted solutions solved the issues and the OWI-430 remained unable to meet CARS standards. *Id.* ¶¶ 33–35. AWI, DND, and OSi continued to work through 2018 to attempt to resolve the issues, but their efforts were unsuccessful. *Id.* ¶ 36. On December 13, 2018, DND sent an email to AWI stating that Canada

could not accept the sensors because they had failed. *Id.* ¶ 39. AWI was thus required to replace all of the sensors it had purchased from OSi. *Id.* ¶¶ 39–40.

AWI filed a Complaint against OSi alleging breach of contract, breach of express warranty, and breach of implied warranty of merchantability on February 22, 2019. ECF No. 1. OSi filed a Motion to Dismiss on April 18, 2019. ECF No. 15. In its Memorandum in support of the Motion, OSi attempted to clarify what it saw as imprecision in the Complaint's description of AWI's equipment purchases from OSi. ECF No. 15-1. Specifically, OSi asserted that when AWI described purchase orders for OWI-430 devices that incorporated OSi's Terms & Conditions by reference, AWI was referring to "Quotations" that OSi prepared and issued to AWI. ECF No. 15-1 at 8 & n.1. OSi attached six such quotations to its motion, which are dated May 30, 2014, October 15, 2014, January 23, 2015, April 9, 2015, January 20, 2016, and December 22, 2016. ECF No. 15-3 at 3, 5, 7, 9, 11, 13.[2] Proceeding on the premise that those quotations constituted the parties' agreement with respect to the sensor sales, OSi argued that the Complaint was untimely and failed to state a claim because the agreement does not contain the warranty terms on which the Complaint relies. ECF No. 15-1 at 11–22.

In response, AWI filed a Motion for Leave to file an Amended Complaint on May 16, 2019, explaining that it made "what amounts to a scrivener's error" in the original Complaint that it only noticed in reviewing the Motion to Dismiss. ECF No. 19-1 at 1–2. In short, AWI had erroneously alleged that each purchase order "incorporated OSi's Terms & Conditions by reference," when instead AWI had meant to allege that the purchase orders incorporated "*AWI's* Terms and Conditions, not OSi's terms and conditions." *Id.* at 2.[3] The Complaint thus did not

---

[2] Pin cites to documents filed on the Court's electronic filing system (CM/ECF) refer to the page numbers generated by that system.
[3] AWI attached a copy of its own terms and conditions to the Motion for Leave. ECF No. 19-3.

intend to refer to OSi's quotations, as OSi's Motion to Dismiss asserted, but rather to AWI-generated purchase orders. *Id.* at 2–3. AWI attached nine such purchase orders to the Motion for Leave, which have dates ranging from October 24, 2012 to December 22, 2016. ECF Nos. 19-4, 19-5, 19-8, 19-10, 19-12, 19-14, 19-15, 19-17, 19-19.

AWI explained that it offered its proposed Amended Complaint "to make clear that when AWI referred to and relied upon its purchase orders as the documents controlling the parties' relationship, AWI intended to allege that the AWI Terms and Conditions referenced on the face of those purchase orders govern the parties' relationship, not the OSi terms and conditions." ECF No. 19-1 at 3. The proposed Amended Complaint also sought to add "allegations regarding the process by which AWI and OSi formed a contractual relationship," and "additional alternate theories of relief . . . based on the same set of operative factual allegations." *Id.* AWI also submitted an opposition to the Motion to Dismiss that responded to its substantive arguments and reiterated the arguments in the Motion for Leave, including that the original Complaint "never referred to OSi's quotes." ECF No. 20-1 at 3, 8–12.

OSi responded on May 30, 2019 with a brief in opposition to the Motion for Leave, asserting that AWI's proposed amendment is made in bad faith and should be rejected on that ground, or alternatively that the Motion should be denied and the case should be dismissed because the amendment is futile and AWI's claims are untimely. ECF No. 21. OSi also filed a Reply in support of its Motion to Dismiss reiterating or expanding on the arguments from its opposition to the Motion for Leave. ECF No. 22. AWI filed a Reply in support of its Motion for Leave on June 13, 2019. ECF No. 23.

## II. STANDARD OF REVIEW

Federal Rule of Civil Procedure 15(a)(2) provides that courts "should freely give leave" to parties to amend pleadings "when justice so requires." Fed. R. Civ. P. 15(a)(2). "This liberal rule gives effect to the federal policy in favor of resolving cases on their merits instead of disposing of them on technicalities." *Laber v. Harvey*, 438 F.3d 404, 426 (4th Cir. 2006). The Fourth Circuit has "interpreted Rule 15(a) to provide that 'leave to amend a pleading should be denied only when the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or the amendment would have been futile.'" *Id.* (quoting *Johnson v. Oroweat Foods Co.*, 785 F.2d 503, 509 (4th Cir. 1986)); *see also Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 674 F.3d 369, 379 (4th Cir. 2012). "Futility is apparent if the proposed amended complaint fails to state a claim under the applicable rules and accompanying standards." *Davison v. Randall*, 912 F.3d 666, 690 (4th Cir. 2019) (quoting *Katyle v. Penn Nat'l Gaming, Inc.*, 637 F.3d 462, 471 (4th Cir. 2011)) (explaining that the plaintiff's proposed amendment was futile if the new claim it added would not have survived a Rule 12(b)(6) motion to dismiss).

To state a claim that survives a Rule 12(b)(6) motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The "mere recital of elements of a cause of action, supported only by conclusory statements, is not sufficient to survive a motion made pursuant to Rule 12(b)(6)." *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012). The Court accepts "all well-pled facts as true and construes these facts in the light most favorable to the plaintiff in weighing the legal sufficiency of the complaint." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th

Cir. 2009). The Court must also "draw all reasonable inferences in favor of the plaintiff." *Id.* at 253 (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 244 (4th Cir. 1999)). "[B]ut [the Court] need not accept the legal conclusions drawn from the facts, and . . . need not accept as true unwarranted inferences, unreasonable conclusions or arguments." *Id.* (first alteration in original) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

"Under limited circumstances, when resolving a Rule 12(b)(6) motion, a court may consider exhibits, without converting the motion to dismiss to one for summary judgment." *Brennan v. Deluxe Corp.*, 361 F. Supp. 3d 494, 501 (D. Md. 2019) (citing *Goldfarb v. Mayor & City Council of Balt.*, 791 F.3d 500, 508 (4th Cir. 2015)). "In particular, a court may consider documents that are 'explicitly incorporated into the complaint by reference and those attached to the complaint as exhibits . . . .'" *Id.* (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016)). The Court may also "consider a document submitted by the movant that was not attached to or expressly incorporated in a complaint, so long as the document was integral to the complaint and there is no dispute about the document's authenticity." *Goines*, 822 F.3d at 166. "To be 'integral,' a document must be one 'that by its very existence, and not the mere information it contains, gives rise to the legal rights asserted.'" *Brennan*, 361 F. Supp. 3d at 502 (quoting *Chesapeake Bay Found., Inc. v. Severstal Sparrows Point, LLC*, 794 F. Supp. 2d 602, 611 (D. Md. 2011)).

## III. DISCUSSION

The parties' overlapping briefing on OSi's Motion to Dismiss and AWI's Motion for Leave essentially presents three related questions: (1) was AWI's Motion for Leave to file an amended pleading made in bad faith and is it prejudicial to OSi; (2) is the motion futile because

7

the proposed Amended Complaint fails to state a claim; and (3) does the statute of limitations bar AWI from obtaining relief. The Court considers each of these questions in turn.

### A. OSi's Allegation of Bad Faith and Prejudice

In its Opposition to the Motion for Leave, OSi first argues that amendment should be denied because AWI has proceeded in bad faith. OSi claims that the proposed Amended Complaint is "based on a completely different and contradictory theory to that set forth in the Complaint" and that AWI waited to change course "until the eve of its opposition filing" and only after it had "reviewed OSi's motion to dismiss and ostensibly realized that it could not win on the facts it had pled." ECF No. 21 at 9. OSi also expresses indignation that AWI sent OSi's counsel a draft of its proposed Amended Complaint and then shared a further modified draft the following day without providing a comparison copy showing the changes. *Id.* at 6–7.

The Court sees no conduct by AWI that approaches the level of bad faith. While it is undoubtedly a substantial "scrivener's error" to repeatedly use the wrong party's name in a pleading's critical allegations, there is no reason for the Court to find that it was the result of deliberate malfeasance and not carelessness. That AWI only noticed the issue when its counsel turned to OSi's motion is unremarkable, and AWI had no obligation to share any drafts of its proposed amendment with OSi before filing, let alone a comparison copy in the style OSi's counsel would prefer. Thus, AWI's Motion for Leave is not prohibited by bad faith. *Cf. Mondragon v. Scott Farms, Inc.*, 329 F.R.D. 533, 540 (E.D.N.C. 2019) (granting a motion to amend the defendant's answer, though defense counsel's actions were "not a model of diligence," because there was no evidence of bad faith).

Nor would allowing the amendment unfairly prejudice OSi. "Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." *Laber*, 438

8

F.3d at 427. "An amendment is not prejudicial . . . if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." *Id.* (citing *Davis v. Piper Aircraft Corp.*, 615 F.2d 606, 613 (4th Cir. 1980)). OSi claims it "expended substantial resources in response to the Complaint," but can point to no other prejudice from allowing the amendment, which comes before discovery and only purports to add new theories and correct and clarify the facts already alleged. ECF No. 9 at 21. Instead, OSi points to two Tenth Circuit cases affirming denials of leave to amend. Review of those cases, however, shows that they both had substantially different circumstances.

In *Viernow v. Euripedes Development Corporation*, the plaintiff sought leave to amend nineteen months after filing his original complaint and after the trial judge orally granted summary judgment for the defendants, effectively closing the case. 157 F.3d 785, 800–01 (10th Cir. 1998). In *Hayes v. Whitman*, the court cited *Viernow* and affirmed a denial of leave to amend where the plaintiffs waited two years after the complaint and moved for leave only after a magistrate judge recommended that summary judgment be granted for the defendants. 264 F.3d 1017, 1022, 1026–27 (10th Cir. 2001). Here, AWI filed its motion less than four months after the original Complaint, and there has been no scheduling order in the case, let alone discovery or summary judgment briefing. Thus, even if the decisions in *Viernow* and *Hayes* controlled here, and they do not, they are plainly distinguishable. The Court will not deny the Motion for Leave on the ground of prejudice.

**B. Failure to State a Claim**

OSi next argues that the Motion for Leave should be denied because the Amended Complaint fails to state a claim and would therefore be futile. This argument centers on the claim that OSi's terms and conditions of sale, which are referenced in the "Quotation" documents that

9

OSi attached to its Motion to Dismiss, govern AWI's purchases of the OWI-430 devices and bar the remedies that AWI seeks in this action. ECF No. 21 at 10. In short, OSi asks the Court to find as a matter of law that its quotations are offers, that the purchase orders AWI attached to its Motion for Leave are acceptances, and OSi's terms and conditions therefore control AWI's remedies here. *Id.* at 10–11. However, the documents OSi has provided are insufficient to negate the allegations in the proposed Amended Complaint that AWI's terms, which are referenced in AWI's purchase orders, controlled the transactions.

As described previously, the quotations that OSi attached to its Motion to Dismiss are dated May 30, 2014, October 15, 2014, January 23, 2015, April 9, 2015, January 20, 2016, and December 22, 2016. ECF No. 15-3 at 3, 5, 7, 9, 11, 13. These dates correspond to the dates of some of the purchase orders that AWI attached to its Motion for Leave. ECF Nos. 19-8, 19-10, 19-12, 19-14, 19-17, 19-19.[4] But the proposed Amended Complaint alleges that the parties' first transaction for OWI-430 sensors was in 2012, not in 2014. Specifically, AWI alleges that it issued a purchase order numbered 21506-1 to OSi on October 24, 2012. ECF No. 19-2 ¶ 30. AWI has attached that purchase order to the Motion for Leave. ECF No. 19-4 at 2. A typed note on the document states that "AWI terms and conditions for all purchase orders are defined within AWI's ISO9001 document M-02-2002" and directs recipients who "require a copy" to "contact the buyer who issued this purchase order." ECF No. 19-4 at 2. Those terms and conditions are also attached to the Motion for Leave. ECF No. 19-3.

To be clear, each of OSi's quotations states that it is "Subject To OSi Terms & Conditions," *see, e.g.*, ECF No. 15-3 at 3, a copy of which OSi has provided as well, ECF No.

---

[4] The Court considers both OSi's quotations and AWI's purchase orders at this stage because, as the parties agree, they are integral to AWI's pleadings. ECF No. 15-1 at 8; ECF No. 20-1 at 2 n.1, 9 n.4; *see Brennan*, 361 F. Supp. 3d at 501–02.

10

15-4. Notably, the quotations contain price, quantity, and other terms that could perhaps render them sufficiently specific to constitute offers, though price quotations "generally . . . are not offers that can be accepted to form binding contracts." *Audio Visual Assocs., Inc. v. Sharp Elecs. Corp.*, 210 F.3d 254, 259 (4th Cir. 2000) ("In determining whether a proposal by one party amounts to an offer, we must ask whether it can be accepted to create an enforceable arrangement."). But critically, OSi has not provided quotations that correspond to AWI's purchase orders from October 24, 2012 or September 30, 2013. ECF Nos. 19-4, 19-6. Lacking those documents, the Court has no means of determining at the pleading stage what terms may have controlled those transactions, which began the parties' business relationship.

In the absence of such documentary evidence, the Court must rely on the well pleaded allegations in the proposed Amended Complaint and construe them in the light most favorable to AWI. *Nemet Chevrolet*, 591 F.3d at 255. AWI alleges that its purchases of OWI-430 sensors from OSi "all followed the same process," in which "AWI solicited quotes from OSi, Defendant OSi provided quotes," the parties "communicated and/or negotiated regarding the quantity of OWI-430 sensors and the delivery date," and then "AWI issued a Purchase Order to OSi for a specific number of OWI-430 sensors," each of which "notified OSi that AWI's terms and conditions . . . applied to all purchase orders." ECF No. 19-2 ¶¶ 24–27. "OSi never disclaimed the AWI Terms and Conditions after receiving an AWI Purchase Order," and "AWI fulfilled its obligations under the Purchase Orders and AWI Terms and Conditions by remitting payment to OSi for the OWI-430 sensors." *Id.* ¶¶ 57–58.

To be sure, the Amended Complaint alleges that even the October 2012 and September 2013 orders were preceded by quotations from OSi that AWI solicited. But without those documents, the Court has no basis to find that those quotations contained references to OSi's

terms and conditions, let alone that those terms controlled the 2012 and 2013 transactions. Importantly, OSi's insistence in its briefing that a copy of its terms was included with all of its quotations – unlike AWI's terms, of which OSi claims it had no awareness – does not disturb this conclusion. ECF No. 21 at 12–14. At the pleading stage, the Court may not consider new allegations of fact that are neither within the scope of the well pleaded allegations in the proposed Amended Complaint nor supported by the documents OSi has provided. *See Nemet Chevrolet*, 591 F.3d at 255.

The Court thus turns to whether the proposed Amended Complaint states a claim based on an alleged agreement to AWI's terms and conditions, from which the pleading quotes at length. Paragraph 5 of the terms states that "Acceptance of the Contract Products by Buyer shall not relieve Seller of its liability for Contract Products which do not conform to the requirements of this Order." ECF No. 19-3 at 3. Paragraph 8, titled "Warranty," provides in part that "Seller warrants for a period of 15 months after acceptance by Buyer or 12 months after final acceptance by Buyer's customer under any applicable prime contract of Buyer, all Contract Products furnished: (1) Are free from defects in material and workmanship and conform to the specifications, drawings, or other requirements of this Order; (2) Are free from defects in design; . . . [and] (4) Are fit for the intended purpose for which the Contract Products will be used." *Id.* In an indemnification clause, the terms state that "Seller shall indemnify and hold harmless at its own expense[] Buyer . . . from any and all liability, claims, actions and expenses, including reasonable attorney's fees based upon, connected with or arising out of in whole or part Seller's performance of this Order." *Id.* at 5.

AWI bases six claims on these terms, beginning with a breach of contract claim alleging that OSi breached Paragraphs 5 and 8 of the AWI terms because the OWI-430 sensors did not

12

meet AWI's specifications and were not free from defects or fit for their intended purpose. ECF No. 19-2 ¶¶ 101–03. "To state a claim for breach of contract, the plaintiff must show that the defendant owed him a contractual obligation and that the defendant breached that obligation." *Thaler v. Donald J. Trump for President, Inc.*, 304 F. Supp. 3d 473, 477 (D. Md. 2018). Taking as true the allegations in the proposed Amended Complaint, AWI has stated a plausible claim that OSi breached its contractual duties to deliver OWI-430 sensors that were functional and would allow AWI to fulfill its contract with DND for AWOS units.

Accordingly, because the proposed Amended Complaint alleges at least one claim sufficient to defeat a motion to dismiss, the amendment is not futile for failure to state a claim.[5] Two claims warrant additional consideration, however. First, OSi's arguments challenging AWI's claim of breach of the implied warranty of merchantability are not mooted by the Amended Complaint because they did not rely entirely on AWI's mistaken citation to OSi's terms. *See Due Forni LLC v. Euro Rest. Sols., Inc.*, No. PWG-13-3861, 2014 WL 5797785, at *2 (D. Md. Nov. 6, 2014) (noting that an amended complaint does not necessarily moot a pending motion to dismiss the original complaint).

"To assert a claim for breach of implied warranty of merchantability, 'a plaintiff must establish that a product is not of merchantable quality and that he suffered an injury as a result. A product is not of merchantable quality when it is not fit for the ordinary purposes for which it is used.'" *Montgomery v. CSX Transp.*, No. SAG-14-1520, 2015 WL 770470, at *4 (D. Md. Feb. 20, 2015) (quoting *Pinney v. Nokia, Inc.*, 402 F.3d 440, 444 (4th Cir. 2005)). "To recover on a claim for breach of implied warranty of merchantability, as with a strict liability or negligence

---

[5] The Court will not discuss each of AWI's additional claims because OSi has not directly attacked their merits since the arguments it made in its original Motion to Dismiss, arguments which are mooted by the corrections in the Amended Complaint.

claim, a plaintiff must prove the existence of a defect at the time the product leaves the manufacturer." *Id.* (quoting *Grinage v. Mylan Pharm., Inc.*, 840 F. Supp. 2d 862, 871 (D. Md. 2011)).

In its Motion to Dismiss, OSi persuasively argued that AWI had failed to state a merchantability claim because it did not allege that the OWI-430 sensors were defective or unusable for their ordinary purpose, but merely that they were insufficient for the "extremely specific purpose of inclusion in AWI's RFP to Canada." ECF No. 15-1 at 17. The proposed Amended Complaint fails to remedy this issue. While the new pleading repeatedly asserts that the sensors had a defect, it makes no allegations about the type of defect beyond that it prevented the sensors from working properly. Nowhere does AWI explain what functionality the sensors lacked that caused the DND to reject them. Nor does AWI identify an ordinary purpose for which the sensors were unfit. Notably, AWI alleges at one point that "[t]he OWI-430 sensors are not free from defects in design *because* they do not meet CARS standards." ECF No. 19-2 ¶ 92 (emphasis added). Similarly, the merchantability count directly links the alleged breach to OSi's inability to "meet DND's technical requirements," rather than an inability to serve an "ordinary purpose." *Id.* ¶ 123. For these reasons, the implied warranty of merchantability count will be dismissed from the proposed Amended Complaint.

The Court will also dismiss AWI's new claim for unjust enrichment. *Id.* ¶¶ 137–42. "It is settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties." *J.E. Dunn. Constr. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F. Supp. 3d 593, 608 (D. Md. 2015) (quoting *FLF, Inc. v. World Publ'ns, Inc.*, 999 F. Supp. 640, 642 (D. Md. 1998)). There is no dispute in this case that a contract governed the parties' transactions; the parties only disagree over which

14

terms and conditions applied. "Although a plaintiff may plead in the alternative by asserting claims for unjust enrichment and breach of contract, when doing so the 'plaintiff's claim for unjust enrichment must include an allegation of fraud or bad faith in the formation of the contract.'" *Id.* (quoting *Jones v. Pohanka Auto N., Inc.*, 43 F. Supp. 3d 554, 573 (D. Md. 2014)). AWI makes no such allegation here. Accordingly, the unjust enrichment claim will be dismissed.

### C. Statute of Limitations

Finally, OSi asserts that the proposed Amended Complaint is also futile because it is barred by the applicable statute of limitations. Under Maryland's codification of the UCC, "[a]n action for breach of any contract for sale must be commenced within four years after the cause of action has accrued." Md. Code Ann., Com. Law § 2-725(1). "A cause of action accrues when the breach occurs, regardless of the aggrieved party's lack of knowledge of the breach." *Id.* § 2-725(2). The statute further provides, however, that "[a] breach of warranty occurs when tender of delivery is made, except that where a warranty explicitly extends to future performance of the goods and discovery of the breach must await the time of such performance the cause of action accrues when the breach is or should have been discovered." *Id.* Much of OSi's argument applies these provisions on the assumption that OSi's terms apply to the transactions at issue, which the Court has already rejected for purposes of the pending motions and thus will not discuss further.

OSi alternatively maintains that the action is untimely even under AWI's terms. OSi focuses on the terms' warranty provision, which provides that the "[s]eller warrants for a period of 15 months after acceptance by Buyer or 12 months after final acceptance by Buyer's customer under any applicable prime contract of Buyer [that] all Contract Products furnished" shall be free from defects, conform to the requirements of the order, and be fit for their intended purpose, among other requirements. ECF No. 21 at 17 (quoting ECF No. 19-3 at 4). According to OSi,

15

because the terms do not define "acceptance" or "final acceptance," the Court should apply the statutory definition of acceptance of goods, Md. Code Ann., Com. Law § 2-606, and conclude that the statute of limitations began in 2012 when AWI received and began testing the OWI-430 sensors that it ordered to make prototypes, or at least in 2014 when it received the first set that it intended to use for the DND contract. *Id.* at 17–18 (citing Md. Code Ann., Com. Law § 2-606).

OSi claims that by receiving and not rejecting these shipments of sensors, AWI not only accepted them, but accepted *all* of the sensors that it ultimately purchased from OSi because they were part of a single commercial unit to be used to fulfill the DND contract. *Id.* at 18. OSi points to the Maryland UCC's definition of "commercial unit" as "such a unit of goods as by commercial usage is a single whole for purposes of sale and division of which materially impairs its character or value on the market or in use." Md. Code Ann., Com. Law § 2-105(6). "A commercial unit may be a single article (as a machine) or a set of articles (as a suite of furniture or an assortment of sizes) or a quantity (as a bale, gross, or carload) or any other unit treated in use or in the relevant market as a single whole." *Id.*

While Maryland case law on these provisions is limited, authority applying identical UCC provisions in other states shows the lack of merit to OSi's argument. Notably, the Fourth Circuit has held, applying Virginia's UCC, that an order of twenty sheets of an aircraft sidewall material was not an order for a single unit, even though they were "priced as a batch of twenty." *Hanwha Azdel, Inc. v. C & D Zodiac, Inc.*, 617 F. App'x 227, 242 (4th Cir. 2015). Further, the Ninth Circuit has explained that the purpose of the UCC's commercial unit provisions is "to protect a seller from having a buyer return *less* than a commercial unit" and thereby "leave the seller with only components of a commercial unit, which would have severely reduced market

16

value." *S & R Metals, Inc. v. C. Itoh & Co. (Am.), Inc.*, 859 F.2d 814, 817 (9th Cir. 1988); *see also Casazza v. Kiser*, 313 F.3d 414, 419 (8th Cir. 2002) (citing *S & R Metals*).

OSi makes no argument that each individual OWI-430 has reduced market value as compared to the entire quantity that it sold AWI for the DND contract over a period of several years. Indeed, taking AWI's description of the sensors in the proposed Amended Complaint as true, it would strain credulity to find that each of the sensors is only a "component[] of a commercial unit" given that OSi sold them to AWI in varying quantities. *S & R Metals*, 859 F.3d at 817. OSi also cites no authority or market usage for the proposition that a buyer's series of product orders to fulfill a contract with a third party comprises a single commercial unit under the relevant UCC provisions. Because OSi's arguments are unpersuasive, the Court will decline to treat AWI's sensor purchases as acquisition of a single commercial unit.

Nor is the Court persuaded that AWI accepted *any* of the sensors in a manner that would start the statute of limitations period, assuming that AWI's terms apply. In short, OSi's argument cannot overcome the provision of the terms providing a warranty that extended for "12 months after final acceptance by [AWI's] customer under any applicable prime contract of [AWI]." ECF No. 19-3 at 3. On its face, that provision is "a warranty [that] explicitly extends to future performance of the goods" such that "discovery of the breach must await the time of such performance" and for which a "cause of action [for breach] accrues when the breach is or should have been discovered." Md. Code Ann., Com. Law § 2-725(2)); *see In re Lone Star Indus., Inc., Concrete R.R. Cross Ties Litig.*, 776 F. Supp. 206, 219 (D. Md. 1991).

Review of the allegations in the proposed Amended Complaint demonstrates that these provisions render AWI's breach and express warranty claims timely. Most importantly, AWI asserts that its contract with DND was a "prime contract" in which DND was AWI's customer,

thus bringing the agreement within the 12-month warranty provision. ECF No. 19-2 ¶ 22. Further, as AWI correctly notes, OSi does not dispute that DND never finally accepted AWI's AWOS units, and in fact rejected them in December 2018, after AWI, OSi, and DND had worked for more than two years to resolve the sensors' technical issues. *Id.* ¶¶ 83, 86. Prior to that point, it was not clear that OSi had breached because the parties had been collaborating in an effort to remedy the issues with the sensors. Therefore, only when DND finally rejected the AWOS units equipped with the sensors was OSi in breach of the agreement, giving rise to AWI's cause of action. *See Shailendra Kumar, P.A. v. Dhanda*, 43 A.3d 1029, 1035 (Md. 2012) ("In breach of contract cases, a cause of action typically accrues at the time of the breach.").

Accordingly, under § 2-725(2), AWI's initial Complaint for breach of contract and breach of express warranty in February 2019 was timely, as are the breach and express warranty claims in the proposed Amended Complaint. AWI's new claim for breach of the implied warranty of fitness for a particular purpose, however, is untimely as to sensors delivered more than four years before the initial Complaint was filed.[6] As OSi notes, "an alleged breach of implied warranty cannot explicitly extend to future performance." *Virtual Physical Ctr. Rockville, LLC v. Phillips Med. Sys. N. Am., Inc.*, 478 F. Supp. 2d 840, 849 (D. Md. 2007). "The Maryland Court of Appeals has held that 'an implied warranty is not explicit' for purposes of § 2–725 and, thus, 'the statute of limitations will always start to run against claims based on implied warranty from the time when delivery of the goods is tendered.'" *Id.* (quoting *Wash. Freightliner, Inc. v. Shantytown Pier, Inc.*, 719 A.2d 541, 545 (Md. 1998)). The Court will not dismiss AWI's fitness for particular purpose claim entirely because some of the sensors that it

---

[6] OSi does not argue that the Amended Complaint does not relate back to the date of the original Complaint under Rule 15(c).

purchased were tendered within four years of the filing of the Complaint, but the scope of the claim is limited to those units.[7]

## IV. CONCLUSION

For the foregoing reasons, OSi's Motion to Dismiss, ECF No. 15, will be granted in part and denied in part, and AWI's Motion for Leave to File Amended Complaint, ECF No. 19, will be granted. AWI's claims of breach of implied warranty of merchantability and unjust enrichment are dismissed, as is its claim of breach of implied warranty of fitness for a particular purpose with respect to sensors tendered more than four years before the initial Complaint was filed. AWI's claims for breach of contract, breach of express warranty, and indemnification may proceed. OSi shall file an Answer within 14 days. A separate Order shall issue.

Date: <u>March   9, 2020</u>    /s/_____
GEORGE J. HAZEL
United States District Judge

---

[7] The Court does not address the timeliness of the new claim in the proposed Amended Complaint for indemnification. OSi has not raised the timeliness of the claim in its briefing, and "[g]enerally, a defendant waives the statute of limitations by failing to raise that defense in its answer or a pre-answer motion." *Goyal v. Thermage, Inc.*, No. WDQ-08-0020, 2010 WL 2651185, at *2 (D. Md. July 1, 2010) (citing *Eriline Co. S.A. v. Johnson*, 440 F.3d 648, 653–54 (4th Cir. 2006)).